UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN H. MCCULLOUGH, JR.,

     Plaintiff,

    -v-      5:23-CV-1028

OFFICER BRIAN GRAVES,
Oswego City Police Officer,
OFFICER MICHAELA FROST,
Oswego City Police Officer, and
OFFICER PRITCHARD, Oswego
City Police Officer,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

JOHN H. MCCULLOUGH, JR.
Plaintiff, Pro Se
29 East 9th Street
Oswego, NY 13126

GOLDBERG, SEGALLA, LLP   JONATHAN M.
Attorney for Defendants     BERNSTEIN, ESQ.
8 Southwoods Boulevard, Suite 300
Albany, NY 12211

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On August 22, 2023, *pro se* plaintiff John H. McCullough, Jr. ("plaintiff")

filed this civil case using the N.D.N.Y.'s form complaint for 42 U.S.C. § 1983

actions.  Dkt. No. 1.  Broadly speaking, plaintiff's complaint alleges that

three law enforcement officers from the City of Oswego's Police Department

violated his constitutional rights during a police encounter that began with a

traffic stop but ripened into an arrest and then a prosecution for drugs.[1]  *Id.*

On October 11, 2023, defendants Graves, Frost, and Pritchard (collectively

"defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

to dismiss plaintiff's complaint in its entirety.  Dkt. No. 19.  The motion has

been fully briefed, Dkt. Nos. 24, 25, and will be considered on the basis of

these submissions without oral argument.[2]

## II. BACKGROUND

The following facts are taken from a review of plaintiff's complaint, Dkt.

No. 1, the attached exhibits, Ex. B at Dkt. No. 1-2 through Ex. G at Dkt. No.

1-7, and a review of plaintiff's memorandum of law in opposition, Dkt. No. 24.

---

[1]  Plaintiff sought permission to "supplement" his complaint with certain additional exhibits, Dkt. No. 14, but the assigned Magistrate Judge denied that request, Dkt. No. 15.  Plaintiff was advised at that time that he could still amend his complaint, but to do so he would have to comply with the relevant rules of civil procedure governing amendments to pleadings.  *Id.*

[2]  Plaintiff has also filed a "supplemental" response.  Dkt. No. 28.  This appears to be a duplicate copy of his motion papers.  *See id.*  The Court has considered it, too.

Late on September 3 or early in the morning of September 4, 2020—the parties seem to agree that it was around midnight—Police Officer Michaela Frost stopped plaintiff's car.  Compl. at 7 ¶ 18; Pl.'s Mem. at 6.[3]  According to her later testimony at an evidentiary hearing in state court, Frost claimed that she had received information from Investigator Graves, who warned her that he had observed plaintiff violate various traffic laws.  *See* Ex. C at 6.

Plaintiff's complaint alleges that defendant Frost's explanation is false and contends that she could not have possibly coordinated with defendant Graves.  *See, e.g.*, Compl. at 5 ¶ 5.  Instead, plaintiff claims that a non-party named "Charles Kangah," a drug dealer who is "best friends" with defendant Graves, somehow helped to get plaintiff arrested.  Compl. at 5 ¶¶ 2–5.

In either case, plaintiff's complaint acknowledges that a traffic stop occurred that night.  According to her later testimony in the state court hearing, Officer Frost approached plaintiff's car, questioned him, and then instructed him to step out of the vehicle.  *See* Ex. C at 6.  When plaintiff complied, defendant Frost claimed that she saw a small baggie of marijuana drop to the ground nearby.  *Id.*

Thereafter, Investigator Graves arrived at the scene, searched plaintiff's vehicle and patted down his person, and claimed that he discovered some

---

[3] Pagination corresponds to CM/ECF.

cocaine.  *See* Ex. C at 7.  Defendants arrested plaintiff.  *See id.*  A grand jury eventually indicted him on some drug charges.  *Id.* at 4.  Plaintiff later filed an omnibus motion to suppress the evidence against him.  *See id.*

On April 24, 2023, after an evidentiary hearing at which defendant Frost testified, Oswego County Court Judge Karen M. Brandt Brown concluded that defendant Frost had "probable cause" to stop plaintiff's car based on Frost's own observation that plaintiff had committed traffic infractions.  Ex. C at 5–7.  However, the state court judge suppressed the cocaine evidence because she concluded that defendant Graves's second search (of plaintiff's person) was improper under state law.  *Id.* at 10.

It is unclear from the complaint, or from a review of the other documents attached to the pleading as exhibits, whether some or all of the drug charges in the indictment were dismissed as a result of the state court's suppression of the cocaine.  However, other documents offered by plaintiff suggest that the state-court indictment was later dismissed entirely.  Dkt. No. 14.[4]

Broadly construed, plaintiff's complaint alleges § 1983 claims for (1) false arrest; (2) malicious prosecution; (3) fabrication of evidence or testimony; and

---

[4] These documents are not part of the complaint.  Instead, they were offered by plaintiff as part of his request to "supplement" his pleading.  Dkt. No. 14.  The assigned Magistrate Judge denied that request.  Dkt. No. 15.  However, defendants reference these documents and have encouraged the Court to examine them for the purpose of this motion practice.  Dkt. No. 19-1 at 16.

(4) conspiracy.  He also alleges a state-law claim for intentional infliction of emotional distress.  Plaintiff seeks 15 million dollars and punitive damages.

## III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  DISCUSSION

As an initial matter, plaintiff is *pro se*.  So his filings must be held to less stringent standards.  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As

the Second Circuit has repeatedly warned, documents filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that [they] suggest[ ]." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

### 1. **False Arrest & Malicious Prosecution**

Defendants argue that the § 1983 claims for false arrest and malicious prosecution must be dismissed because the exhibits attached to the complaint establish probable cause for plaintiff's arrest (at the traffic stop) and his later indictment (on the drug charges). Defs.' Mem., Dkt. No. 19-1 at 15.

Notably, defendants' brief seems to treat this "probable cause" inquiry on the false arrest claim as identical to, or perhaps overlapping with, the version of the probable cause inquiry relevant to the malicious prosecution claim. *See* Defs.' Mem. at 12–15; *see also* Defs.' Reply, Dkt. No. 25 at 6 & n.1.

But these are distinct inquiries. *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) ("The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases."). So they must be analyzed separately. *See, e.g.*, *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) (finding that trial court erred in applying presumption of probable cause arising from indictment to false arrest claim).

### a. **False Arrest**

To establish a claim under § 1983 for false arrest, the plaintiff must show that: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to it; and (4) the confinement was not privileged. *LaFever v. Clarke*, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021).

In the context of an arrest, a confinement is "privileged" if it is based on "probable cause." *See, e.g.*, *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "A police officer has probable cause to arrest when he has knowledge of reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (cleaned up).

Defendants argue that the false arrest claim must be dismissed because "the Decision & Order on Hearings confirmed that plaintiff had cocaine and marijuana." Def.'s Mem. at 14 (citing Dkt. No. 1-3). According to defendants, this conclusion is supported by the fact that plaintiff attached as an exhibit the "State Police lab report confirming cocaine." *Id*. (citing Dkt. No. 1-3).

In other words, defendants claim that certain findings in the state-court proceedings preclude plaintiff from relitigating the probable cause issue in this federal action. To be sure, issue preclusion can sometimes bar a § 1983 claim. *Barnes v. Cnty. of Monroe*, 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015)

("It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983.").

For instance, if a state court determines that a warrantless search or seizure was supported by probable cause, the state-court defendant who later becomes a civil-rights plaintiff typically cannot relitigate the issue of probable cause in a § 1983 action in federal court. *See, e.g.*, *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 426 (S.D.N.Y. 2012) (collecting cases).

The problem with defendants' argument is that the exhibits attached to plaintiff's complaint do not conclusively establish that he litigated and lost the issue of probable cause for the *arrest*. The submissions establish that the state court heard testimony and concluded that Officer Frost "had probable cause to stop the vehicle based on her observations of the defendant's traffic violations." Ex. C at 7.[5] So it is possible that plaintiff would be unable to relitigate the validity of the initial seizure; *i.e.*, the vehicle stop itself.[6] *See, e.g.*, *Forte v. City of N.Y.*, 2023 WL 6259652, at *5 (S.D.N.Y. Sept. 26, 2023).

But the justification needed for a traffic stop (here, that Frost observed traffic infractions) is ordinarily different than what is required to establish

[5] The state court called this "probable cause" to seize the vehicle but cited language suggesting it was more of a *Terry* stop, which is subject to a lesser standard. Ex. C at 8.

[6] Even that conclusion is less than clear on the existing record. The charges against plaintiff seem to have been dropped entirely, which means the findings in the state court's pre-trial suppression hearing might not be entitled to any preclusive effect at all. *See Forte*, 2023 WL 6259652, at *5.

probable cause to arrest.  And that distinction matters, because the issue is whether defendants had probable cause to *arrest* plaintiff, not just to stop him.

Defendants say they arrested plaintiff after they found the drugs on his person.  Notably, plaintiff's complaint does not clearly allege that he was *not* in possession of the marijuana at the time of the stop.  Compl. at 2 (alleging that defendant Graves (who recovered the cocaine) "planted drugs on [his] person."); *but see* Compl. at 7 ¶ 17 ("Every accusation made by these officers on the night in question is a lie.").

But even assuming for present purposes that plaintiff did in fact concede that Frost recovered marijuana from him, the state court concluded that an arrest on that basis was improper because marijuana possession warranted only an appearance ticket at that time.  Ex. C. at 9–10.

That result is at least a little unexpected, since the decision of whether to issue an appearance ticket (versus an arrest) is ordinarily a discretionary determination by the police.  *Zarkower v. City of N.Y.*, 461 F. Supp. 3d 31, 38–39 (E.D.N.Y. 2020) (collecting cases).  Thus, depending on the state of the law at the time, it is still possible that "arguable probable cause" existed to arrest plaintiff for the marijuana alone.

But defendants' brief does not articulate whether the marijuana, standing alone, would have supported the arrest.  Instead, defendants focus on the

*cocaine* allegedly recovered by defendant Graves.  In defendants' view, this evidence certainly gives rise to probable cause for the arrest.  Defs.' Mem. at 15.  Although they acknowledge that the state court suppressed the cocaine after concluding that it was the fruit of an improper search, defendants argue that the *fact* of the cocaine being found on plaintiff's person can be considered in this civil rights action.  *Id*.  After all, plaintiff's own filings include the lab report that confirmed the substance found on him was cocaine.  *Id*. at 14.

But this argument begs the question.  Plaintiff alleges that Investigator Graves "planted drugs on [his] person."  In other words, plaintiff appears to deny that he possessed any cocaine at the stop.  So if that is assumed true, as typically required on a motion to dismiss, it does not matter if some piece of evidence later tested by the police lab was cocaine.  And because it seems like all the drug charges against plaintiff were later dropped, there is no obvious bar to this claim, such as under *Heck v. Humphrey*, 512 U.S. 477 (1994).

Even so, plaintiff's § 1983 false arrest claim must be dismissed because it fails to *plausibly* allege that one or more of the named defendants violated his Fourth Amendment right to be free from a warrantless arrest in the absence of probable cause.  "*Pro se* status confers on an unrepresented party several direct and indirect benefits, typically in the form of extra procedural latitude and a substance-over-form approach to a lawyer-less litigant's less-than-

perfect pleading, briefing, and argumentation." *Clark v. Tanner*, 2023 WL 6847691, at *2 (N.D.N.Y. Oct. 17, 2023).

However, *pro se* status does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Clark*, 2023 WL 6847691, at *2 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). This includes the baseline procedural requirement imposed by our federal plausibility pleading regime, which tests the legal sufficiency of a pleading by asking whether the plaintiff has alleged "sufficient factual matter" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

As the foregoing discussion serves to demonstrate, the Court has been left to speculate about basically all of the salient historical facts. Indeed, the whole analysis is lousy with tentative qualifiers such as "appears," "seems," and "likely." Of course, adding some measure of solicitude to the mix is par for the course in cases with *pro se* plaintiffs. But the Court cannot make up all the necessary facts for the plaintiff or assume the existence of a whole set of facts that would state a plausible claim.

This is because, even for *pro se* plaintiffs, the federal plausibility standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. But as of right now, that is all plaintiff has offered: an unadorned assertion that Investigator Graves planted drugs. And aside from his single, wholly conclusory accusation against defendant

Graves, plaintiff's complaint and attached exhibits fail to offer any facts that might tend to show that defendant Frost and/or defendant Pritchard were "personally involved" in misconduct that might be actionable as a *false arrest* under § 1983.  Accordingly, this claim will be dismissed.

### b. Malicious Prosecution

To establish a claim under § 1983 for malicious prosecution, the plaintiff must show: (1) the initiation or continuation of a criminal proceeding by the defendant against him; (2) the termination of that proceeding in his favor; (3) a lack of probable cause; (4) that actual malice motivated the defendant's actions; and (5) a sufficient post-arraignment liberty restraint for Fourth Amendment purposes.  *Harris v. Tioga County*, –F. Supp. 3d–, 2023 WL 2604125, at 16 (N.D.N.Y. Mar. 23, 2023) (citing *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) *and Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021)).

Defendants argue that plaintiff's § 1983 claim for malicious prosecution must be dismissed because "the grand jury of Oswego County indicated [*sic*] plaintiff on four criminal counts."  Def.'s Mem. at 14.  In defendants' view, "[b]y including the grand jury transcript with the complaint, plaintiff's pleadings demonstrate the existence of probable cause."  *Id.*

As with a claim for false arrest, "probable cause" is a complete defense to this kind of § 1983 claim.  *Manganiello v. City of N.Y.*, 612 F.3d 149, 161–62

(2d Cir. 2010). "Probable cause, in the context of malicious prosecution, has [ ] been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Soomro v. City of N.Y.*, 174 F. Supp. 3d 806, 814 (S.D.N.Y. 2016) (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003)).

Importantly, however, a heightened requirement applies here because plaintiff's submissions establish that a grand jury indicted him on the drug charges. "A grand jury indictment creates a presumption of probable cause that 'may be rebutted only be evidence that the indictment was procured by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith.'" *Buari*, 530 F. Supp. 3d at 384 (quoting *Manganiello*, 612 F.3d at 162).

Upon review, this claim must also be dismissed. As noted *supra*, plaintiff appears to allege that defendant Graves somehow falsified evidence (*e.g.*, he "planted drugs"). Plaintiff also appears to claim that defendant Graves, and possibly defendants Frost and/or Pritchard, falsified some later statements and perhaps even testified falsely to the grand jury.

As an initial matter, some of this possible misconduct is just not actionable under § 1983 no matter how much more factual detail plaintiff might offer. It may seem unusual, but grand jury witnesses are immune from § 1983 claims

based on their testimony, even if the testimony is alleged to be false or perjurious.  *See, e.g.*, *Rehberg v. Paulk*, 556 U.S. 356 (2012).

Notably, however, law enforcement officials who falsify or fabricate evidence used in contexts *other* than a grand jury proceeding may only be shielded with a less-than-complete form of immunity.  *See, e.g.*, *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (collecting cases).

But as before, outside of the conclusory assertion that defendant Graves planted drugs at some point and in some manner, it would be total guesswork to figure out what, if anything, Graves did that might meet any of the other elements of a malicious prosecution.  And just as much or more guesswork would be necessary to figure out how defendants Frost and/or Pritchard could be "personally involved" in misconduct that might be actionable as a claim for *malicious prosecution*.

In short, plaintiff has failed to allege sufficient factual matter to state a plausible § 1983 claim for malicious prosecution.  *Cf. Stukes v. City of N.Y.*, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (holding presumption of probable cause unrebutted where the plaintiff alleged in conclusory fashion that the defendants presented "false-facts" to the grand jury).

## 2.  Fabrication of Evidence

Defendants argue that any § 1983 claim for fabrication of evidence or false testimony must be dismissed, either because absolute immunity shields the

defendants from liability based on their grand jury testimony or because the exhibits attached to plaintiff's complaint establish the "essential fact of drug possession." Defs.' Mem. at 16.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[red] a deprivation of life, liberty, or property as a result." *Ashley v. City of N.Y.*, 992 F.3d 128, 139 (2d Cir. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Upon review, this claim will be dismissed substantially the same reasons as the malicious prosecution claim just discussed above. Unlike false arrest or malicious prosecution claims, probable cause is not fatal to a fabricated-evidence claim. *See, e.g.*, *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021). But as with plaintiff's other § 1983 claims, aside from a single conclusory assertion about defendant Graves, the contours of this fabricated-evidence claim are a total mystery. Accordingly, this claim will be dismissed.

### 3. **Conspiracy**

Defendants argue that plaintiff's § 1983 claim for conspiracy must be dismissed because the complaint fails to plausibly allege that one or more defendants conspired with anyone else. Defs.' Mem. at 19–21.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Butler v. Hesch*, 286 F. Supp. 3d 337, 363 (N.D.N.Y. 2018) (D'Agostino, J.).

Upon review, defendants' motion to dismiss this claim will be granted. Broadly construed, plaintiff's complaint seems to suggest that one or more of the defendants may have somehow coordinated with others to have plaintiff arrested on false charges. But this kind of generalized speculation is far from enough to plausibly allege a claim for conspiracy.

First off, to the extent plaintiff suggests that defendant Graves may have conspired with defendant Frost (it remains unclear how Pritchard comes into this story), law enforcement officers are legally incapable of conspiring with each other.[7] *See, e.g.*, *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013). Accordingly, any § 1983 claim for conspiracy between one or more of the named defendants would fail as a matter of law.

Second, plaintiff's complaint (and some of his attached exhibits) suggests that he believes his former attorney may have somehow been working at odds

---

[7] There are some limited exceptions to this rule, but they are not implicated in this fact pattern.

with his litigation goals, or that possibly the drug dealer named Kangah may have been involved because he and defendant Graves are old friends.

But those allegations are also completely insufficient to plausibly allege a conspiracy claim.  As relevant here, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

Unlike plaintiff's other § 1983 claims, which might turn out to be plausible if supported with some additional level of detail, this § 1983 conspiracy claim is completely devoid of any facts and instead relies on a familiar but faulty proposition: "one or more defendants harmed me" and therefore "they must've conspired to do it."  But that is not enough.  Accordingly, this § 1983 claim will be dismissed *without* leave to amend.[8]

### 4. **State-Law Claim**

As a final matter, defendant identifies in plaintiff's pleading a possible state-law claim for intentional infliction of emotional distress ("IIED").  Def.'s Mem. at 21–22.  Plaintiff, for his part, takes up this suggestion.  He goes on to reference this IIED claim in the table of contents of his brief, but does not

---

[8]  In his opposition brief, plaintiff also talks about "kidnapping."  A review confirms there is no obvious basis on which to construe this as a possible claim under federal or state law.  It will not be considered further.

go on to develop the contours of the claim in any detail.  *Compare* Pl.'s Opp'n at 2, *with* Pl.'s Opp'n at 3–10.

Upon review, this claim must be dismissed.  Plaintiff may or may not be able to amend his pleading to assert one or more plausible § 1983 claims.  But the named defendants here were acting as municipal employees; *i.e.*, police officers, at the time of the alleged misconduct.

New York law bars IIED claims against this kind of defendant.  *See, e.g.*, *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007).  Even assuming otherwise, plaintiff has failed to allege the kind of "extreme and outrageous conduct that transcends the bounds of decency" that would be necessary to sustain this kind of state-law claim.  *Id*.  Accordingly, this claim will also be dismissed *without* leave to amend.

## V.  <u>CONCLUSION</u>

Plaintiff's complaint must be dismissed.  Even accounting for his *pro se* status, he has failed to plausibly allege any actionable claims.  However, with the exception of the § 1983 claim for conspiracy and the state-law claim for IIED, defendants' request to dismiss plaintiff's complaint *with prejudice* (*i.e.*, without any leave to amend) must be denied at this juncture.

This is because plaintiff is *pro se* and this is his first attempt at pleading these claims against these defendants.  *See, e.g.*, *Matima v. Cell*, 228 F.3d 68, 81 (2d Cir. 2000) ("Generally, leave to amend should be freely given, and a

*pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.").  Thus, with the exception of the conspiracy and IIED claims, plaintiff shall be given an opportunity to amend his pleading.

If plaintiff chooses to take advantage of this opportunity, plaintiff is advised that he must include sufficient factual detail to enable the Court to determine whether he has plausibly alleged one or more of his § 1983 claims against one or more of the named defendants under the law governing claims for false arrest, malicious prosecution and/or fabricated evidence.  To do so, plaintiff must clearly set forth the facts that give rise to his claims, including the dates, times, and places of the alleged acts, and an explanation of how each individual committed each allegedly wrongful act.

Plaintiff is cautioned that any amended pleading will replace the previous existing complaint.  In other words, the amended complaint must be a single document that does not rely upon any other materials that have previously been filed with the Court (although he can certainly attach exhibits to the new pleading, as he has previously done with this one).

As for any exhibits he might attach to his amended pleading, plaintiff is advised that, instead of scribbling handwritten narrative statements into certain highlighted portions of these documents, he should write a pleading that contains a single, clear history of the events that occurred and describe,

with supporting factual detail (preferably in a sequential series of numbered individual paragraphs) how each defendant was involved in the alleged violation of his constitutional rights.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiff's complaint is DISMISSED;

3.  Plaintiff's § 1983 claims for false arrest, malicious prosecution, and fabrication of evidence are DISMISSED *with* leave to amend;

4.  Plaintiff's § 1983 claim for conspiracy is DISMISSED *without* leave to amend;

5.  Plaintiff's state-law claim for intentional infliction of emotional distress is DISMISSED *without* leave to amend;

6.  Plaintiff shall have THIRTY DAYS in which to file an amended complaint as to his § 1983 claims for false arrest, malicious prosecution, and/or fabrication of evidence against defendants Graves, Frost, and/or Pritchard;

7.  If plaintiff files an amended pleading within this time period, the Clerk shall reset the deadlines in which to answer or move against the pleading; and

8.  If plaintiff does not file an amended pleading within this thirty-day

time period, the Clerk is directed to close this case and enter a judgment

without further Order of this Court.

IT IS SO ORDERED.


Dated:  December 5, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge